IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

J. PAUL CLINTON and
STOKES and CLINTON, P.C.                                    PLAINTIFFS

V.                              CIVIL ACTION NO. 5:12-CV-84-DCB-RHW

W. RICHARD JOHNSON, SR., DAVID M.
SESSUMS, VARNER, PARKER &
SESSUMS, P.A., OMAR L. NELSON,
MORGAN & MORGAN, P.A., MORGAN &
MORGAN, PLLC and TAMRA WARNOCK                              DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before the Court are Motions to Dismiss separately filed by Defendants Richard Johnson, Sr., David M. Sessums, Varner, Parker & Sessums, P.A., and Tamara Warnock (collectively, "Warnock Defendants") [**docket no. 3**] and by Defendants Omar L. Nelson, Morgan & Morgan, P.S., and Morgan & Morgan, PLLC (collectively, "Morgan & Morgan Defendants") [**docket no. 16**]. Having carefully considered the Motions, the Plaintiffs' opposition thereto (jointly, "Clinton"), applicable statutory and case law, and being otherwise fully advised in the premises, the Court finds and orders as follows:

### I. PLEADED FACTS AND CLAIMS

According to the Complaint [docket no. 1], Plaintiff J. Paul Clinton, who is licenced to practice law in Mississippi, sued and took a default judgment for his client State Farm Mutual Automobile Insurance against Defendant Tamara Warnock in Warren County, Mississippi on November 27, 2006. Compl. ¶ 12 & Ex. A. The default

judgment related to a car accident in which Warnock was alleged to have been involved. Compl. ¶ 12 & Ex. A. Shortly thereafter, Defendant Richard Johnson, one of Warnock's attorneys, moved to set aside the judgment and a hearing was set on the matter. Compl. ¶ 13. In response to Warnock's Motion, wherein she averred that she was not driving the car when the accident occurred, Compl. Ex. A ¶ 4, Clinton sent a letter and proposed order to Johnson, stating that State Farm would agree to set aside the default judgment and dismiss Warnock from the suit if she would stipulate to certain facts regarding her involvement in the accident. Compl. ¶ 14, 17. Warnock declined State Farm's offer and chose instead to proceed with the hearing. Compl. ¶ 15.

At the hearing, Warnock provided testimony supporting her claim that she could not be liable for the accident, and the trial court set aside the judgment. Compl. ¶ 18. Another of Warnock's attorneys at the hearing, Defendant David M. Sessums, then moved for sanctions against Clinton, but the trial court declined the request. Compl. ¶ 19 & Ex. C. Following the hearing, Clinton claims that he approached Johnson in an effort to "promote civility and professional courtesy." Compl. ¶ 22. According to Clinton, Johnson rebuffed his good-faith attempt to smooth over the matter and informed him that another "similar case" was pending in Hinds County. Compl. ¶ 23. Clinton then went to the law office of Varner, Parker & Sessums, to speak with Sessums. Clinton states that

Sessums was receptive to his overtures and agreed to resolve any similar disputes out of court before filing any motions for sanctions. Coml. ¶ 24.

Mistakenly believing the matter had been resolved, on September 26, 2007, Clinton learned from various clients, family, and friends that the Clarion Ledger was running an advertisement in which Johnson was soliciting potential clients who had been treated similarly to Warnock with the intention of filing a class-action lawsuit against Clinton. Compl. ¶ 29. Through some investigation, Clinton discovered that Varner, Parker & Sessums had paid for the advertisement. Compl. ¶ 30. Upon discovering this information, Clinton contacted both Johnson and Varner, Parker & Sessums to inform them that he believed their conduct violated Mississippi Rule of Professional Conduct 7.2(e), which prohibits a lawyer from directly or indirectly paying for the cost of an advertisement for someone in another firm. Compl. ¶ 31. Sessums responded that Johnson had been associated with the firm in the matter and that the advertisement would continue to run. Compl. ¶¶ 33, 34. In response, Clinton retained counsel and was successful in getting the advertisement permanently enjoined. Compl. ¶ 38.

Subsequently, Warnock, represented by Johnson and Varner, Parker & Sessums, filed a class-action Racketeer Influenced and Corrupt Organizations (RICO) Act lawsuit in this Court against Clinton and his law firm, which included allegations that Clinton

committed wire and mail fraud in his communications with Warnock. Compl. ¶¶ 39, 40. After the RICO claim survived Clinton's motion to dismiss, Warnock retained Defendants Morgan & Morgan as additional counsel. Compl. ¶ 41; see generally, Warnock v. State Farm Mut. Auto. Ins. Co., 2008 WL 4594129 (S.D. Miss. Oct. 14, 2008). Clinton spent the next three years defending Warnock's RICO allegations. Compl. ¶ 42. During the course of discovery, Warnock testified that she had received no letters or phone calls from Clinton, his law firm, or his client, an occurrence necessary for the survival of her mail and wire fraud claims. Compl. ¶ 43. Clinton then moved for summary judgment, which this Court granted because Warnock could not produce any evidence of the commission of two or more incidents of fraud and thus could not show a pattern of racketeering activity. Compl. ¶ 46; see generally Warnock v. State Farm Mut. Auto. Ins. Co., 833 F. Supp. 2d 604, 608-09 (S.D. Miss. June 15, 2011). Clinton avers that not only did he spend $789,429.44 on defending a meritless case but also that his malpractice premium increased 300% as a result of the lawsuit. Compl. ¶¶ 46, 47.

On the strength of these allegations, Clinton states seven claims against both the Warnock and Morgan & Morgan Defendants: Malicious Prosecution; Intentional and/or Negligent Infliction of Emotional Distress; Libel Per Se; Libel Per Quod; Invasion of Privacy (False Light); Invasion of Privacy (Appropriation of Plaintiffs' Names); Abuse of Process. Compl. ¶¶ 48-74. He seeks the

4

following compensatory damages: fees incurred in defending the RICO lawsuit; the cost of the increase in his malpractice insurance premium; compensation for the harm to his reputation; compensation for general pain, anguish, and emotional distress suffered as a result of the lawsuit. Compl. ¶¶ 75. He also seeks punitive damages because of the Defendants' allegedly willful and malicious conduct. Compl. 76. The Defendants move for dismissal pursuant to Federal Rule of Procedure 12(b)(6).

## II. STANDARD OF REVIEW

In considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004) (quoting Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

To overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "Factual allegations must be enough to raise a right to relief above the speculative level, on

5

the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555 (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

### III. ANALYSIS

**A. Morgan & Morgan Defendants' Motion to Dismiss**

The Morgan & Morgan Defendants are distinguishable from the Warnock Defendants because of their limited participation in the events that comprise the present suit. Specifically, the Complaint indicates that they served only as legal counsel in Warnock's RICO action against Clinton. The Morgan & Morgan Defendants have moved for dismissal based upon a variety of arguments, including whether the statute of limitations has run on Clinton's claims, but their primary argument is that they cannot be liable based purely on their participation in the RICO lawsuit. Having surveyed Mississippi law on point, this Court agrees.

*1. Malicious Prosecution*

For Clinton to recover for malicious prosecution against the Morgan & Morgan Defendants, he must prove the following elements with respect to *their* actions:

> (1) The institution of a criminal [or civil] proceeding; (2) by, or at the insistence of, the defendant; (3) the termination of such proceedings in plaintiff's favor; (4) malice in instituting the proceedings; (5) want of

6

> probable cause in the institution of the proceedings; (6) the suffering of injury or damage as a result of the prosecution.

Tebo v. Tebo, 550 F.3d 492, 498-99 (5th Cir. 2008) (quoting, with the exception of the alteration, Parker v. Miss. Game & Fish Comm'n, 555 So. 2d 725, 728 (Miss. 1989)). As an initial matter, Clinton has not alleged any facts in his Complaint that would support the fourth element of his claim: malice. The Complaint alleges that "[t]he Defendants *instituted* the RICO action primarily for a purpose other than that of bringing the Plaintiffs to justice." Compl. ¶ 52 (emphasis added). Even if this statement can be construed to support the allegation of malice, factually, it can only refer to the Warnock Defendants, who alone were responsible for filing the RICO action. Moreover, the only other facts in the Complaint that support the inference of malice are the Warnock Defendants' decision to run the Clarion Ledger advertisement and subsequently file a lawsuit. According to the Complaint, the Morgan & Morgan Defendants had nothing to do with these events. Compl. ¶ 44.

Appearing to recognize this deficiency in his Complaint, in his brief Clinton advances the legal theory that the Morgan & Morgan Defendants acted with "malice" when they discovered or should have discovered that Warnock's RICO lacked a "probable

7

cause" of success[1] but failed to dismiss the case. See Pl.'s Reply Br. at 12-14; Owens v. Kroger Co., 430 So. 2d 843, 847 (Miss. 1983) (stating that the inference of malice may be drawn from the lack of probable cause). In other words, Clinton suggests that the Morgan & Morgan Defendants are liable for malicious prosecution by virtue of their willing participation in a meritless case. But this theory is not tenable under Mississippi law. In Rose v. Tullos the Mississippi Supreme Court repudiated the argument that an attorney could be liable for malicious prosecution for continuing to pursue his client's case after discovering that the case has no merit. 994 So. 2d 734, 739 (Miss. 2008). In reaching this decision, the supreme court opined that a malicious prosecution claim fails on these facts because "[n]o continuing duty exists to force an attorney to abandon a claim if it later appears to be without merit." Rose, 994 So. 2d at 739 (citing Bean v. Broussard, 587 So. 2d 908, 913 (Miss. 1991)).[2] Regardless of whether Clinton is correct that this statement has been too broadly applied, there is no question that an attorney's *failure to dismiss a meritless case*

---

[1] One problem with Clinton's allegation is that "[probable cause is determined from the facts apparent to the observer when prosecution is *initiated*." Owens, 430 So. 2d at 846. The Morgan & Morgan Defendants did not initiate the prosecution.

[2] The Mississippi Supreme Court presumably meant that an attorney has no duty *to the adverse party*, since an attorney has some duty to the court not to pursue a frivolous pleading. Miss. R. Civ. P. 11(b); see also Miss. Code Ann. § 73-3-37 (listing seven duties of an attorney).

cannot form the basis of a malicious prosecution claim. Compare Rose, 994 So. 2d at 739 (holding that "Tullos, acting as Jones's attorney, was not the proper party against whom to bring [a malicious prosecution] action") with Harried v. Forman Perry Watkins Krutz & Tardy, 813 F. Supp. 2d 835, 842 (S.D. Miss. 2011) (stating that Rose held that "*an attorney* is 'not the proper party against whom to bring [a civil malicious prosecution] action'") (emphasis added). For this reason, Clinton's malicious prosecution claim against the Morgan & Morgan Defendants must be dismissed.

*2. Remaining State Law Claims*

But the Parties' discussion regarding a lawyer's potential liability for harms caused to an adverse litigant does have some bearing on Clinton's other causes of action. See Def.s' Br. at 5-6; Pl.'s Reply Br. at 5-8; Def.'s Rep. Br. at 3-5. Fundamentally, the debate between the parties is simply whether the Morgan & Morgan Defendants can, as a matter of law, be liable to Clinton for actions arising out of their participation in the RICO action. In a relatively analogous situation, the Mississippi Supreme Court dismissed a plaintiff's negligence claim against his adversary's legal counsel because "[the adversary's attorney] had no duty to [the plaintiff] which could give rise to plaintiff's recovery under a tort theory." Roussel v. Robbins, 688 So. 2d 714, 725 & n.4 (Miss. 1996). Not only does this blanket statement lend some credence to the Morgan & Morgan Defendants' broader malicious

prosecution argument, i.e., that they could not be liable under any set of facts, it forecloses each of Clinton's remaining claims against the Morgan & Morgan Defendants because each of Clinton's allegations sound in tort and are strictly related to their prior representation of Warnock. See James v. Chase Manhattan Bank, 173 F. Supp. 2d 544, 550 (N.D. Miss. 2001). Regardless of whether Clinton's claims against the Morgan & Morgan Defendants are viable in other states, Mississippi law does not look favorably on a litigant's attempt to sue his adversary's attorney for actions taken during the course of prior litigation. Compare Pl.s' Reply Br. at 7-8 (stating that Mississippi holds the minority view, citing cases) with James, 173 F. Supp. at 550 ("This Court is unaware of any authority, however, not only in Mississippi, but anywhere in the country, which suggests that an attorney owes a duty, fiduciary or otherwise, to the adverse party in a case he is litigating.").

In sum, if Clinton had alleged that the Morgan & Morgan Defendants played a role in the genesis of the litigation or took some action unrelated to their legitimate representation of their client, i.e., acted as more than legal counsel, then perhaps more would need to be said about the particulars of each of Clinton's claims. But the only actions allegedly taken by the Morgan & Morgan Defendants were the routine actions of a lawyer representing a client, albeit in an allegedly frivolous lawsuit. Under Mississippi

law these actions alone cannot form the basis of a malicious prosecution claim or any other tort claim, and accordingly, all Clinton's claims against the Morgan & Morgan Defendants will be dismissed with prejudice because Clinton has failed to state a plausible claim against them.

The Court is careful to articulate that this holding is strictly limited to the Morgan & Morgan Defendants. Clinton's claims against Warnock, particularly his malicious prosecution claim, are subject to a different analysis because she was the plaintiff in the RICO action. Further, because Clinton has alleged that Johnson, Sessums, and Varner, Parker & Sessums were the impetus for the Clarion Ledger advertisement and the RICO case, they too fall outside of the Court's analysis above. With that caveat, the Court now turns to Clinton's claims against the Warnock Defendants.

**B. Warnock Defendants' Motion to Dismiss**

*1. Malicious Prosecution*

With respect to Clinton's malicious prosecution claim, the Warnock Defendants move for dismissal solely because they believe that a malicious prosecution claim can only follow the institution of a criminal action. See Defs.' Br. at 3 ("Plaintiffs miss the point and miss the boat. Because no criminal actions were encouraged . . . no cause of action accrued . . . ."). But as is apparent from the Tebo quotation above—a quotation that was

11

provided by the Warnock Defendants in their brief—the institution of a civil action can form the foundation of a malicious prosecution claim. <u>Tebo</u>, 550 F.3d at 498-99. Because the Warnock Defendants moved to dismiss Clinton's malicious prosecution claim on this ground alone, <u>id.</u> at 2-3, their Motion as to this claim will be denied.[3] <u>See</u> Pl.s' Resp. Mot. ¶¶ 4-6.

*2. Intentional/Negligent Infliction of Emotional Distress*

As for Clinton's intentional/negligent infliction of emotional distress claims, the Parties spar over whether Clinton's claims are barred by the applicable statutes of limitations. They appear to agree that the one-year statute of limitations codified in Miss. Code Ann. § 15-1-35 applies to Clinton's intentional inflection of emotional distress claim, <u>Jones v. Fluor Daniel Services Corp.</u>, 32 So. 3d 417, 423 (Miss. 2010), and the three-year general statute of limitations codified in Miss Code Ann. § 15-1-49 governs his negligent infliction of emotional distress claim. <u>Air Comfort Sys., Inc. v. Honeywell, Inc.</u>, 760 So. 2d 43, 47 (Miss. App. 2000).

Turning to the Complaint, the alleged harm suffered by Clinton was caused by two events: (1) the Clarion Ledger advertisement and (2) the RICO action. The first Clarion Ledger advertisement ran in mid-2007, more than three years before Clinton filed the present

---

[3] Inasmuch as the Warnock Defendants raise arguments in their rebuttal memorandum that are unrelated to the arguments contained in their Motion and supporting memorandum brief, the Court chooses not to entertain them rather than to ask Clinton for additional briefing.

12

suit. Inasmuch as Clinton's emotional distress claims are predicated on the Clarion Ledger advertisements, those claims are barred by both the one-year and three-year statutes of limitations. Contrary to Clinton's argument, the Clarion Advertisement and the RICO lawsuit cannot be considered one continuing emotional distress violation because they are separate events, each giving rise to its own cause of action. See Smith v. Franklin Custodian Funds, Inc., 726 So. 2d 144, 149 (Miss. 1998). But Clinton's intentional inflection of emotional distress claim related to the RICO action is not barred by either statute of limitations because the RICO action terminated less than one year before Clinton filed his Complaint. But the Court agrees with the Warnock Defendants that Clinton's allegation of *negligence* in connection with the RICO action runs counter to the facts and other allegations in the Complaint. Clinton alleges that the Warnock Defendants initiated the lawsuit for an improper purpose. Compl. ¶ 52. Accordingly, this Court construes Clinton's claim as one for intentional infliction of emotional distress, see Childers v. Beaver Dam Plantation, Inc., 360 F. Supp. 331, 334 (D.C. Miss. 1973), and it is the only claim that survives the Warnock Defendants' statue of limitations argument.

   *3. Libel Claims*

Likewise, the Warnock Defendants are also correct that Clinton's libel claims based on the publication of the Clarion

Ledger advertisements are time-barred because he did not bring his claims within one year of the date of first publication. McCorkle v. McCorkle, 811 So. 2d 258, 265 (Miss. App. 2001) (citing Forman v. Mississippi Publishers Corp., 195 Miss. 90, 107, 14 So. 2d 344, 347 (1943)). That determination is beyond dispute. Even Clinton, who challenges the Warnock Defendants on most of their arguments, fails to directly respond to this argument.

As for Clinton's contention that the Warnock Defendants may have committed libel in their pleadings in the RICO case, the Parties engage in a legitimate dispute over how to interpret Mississippi law. Both Parties acknowledge that statements made in connection with judicial proceedings are generally privileged from charges of defamation, a point which is settled in Mississippi law. They differ as to whether the allegation of malice can overcome such privilege. Def.s' Br. at 6-7; Pl.s' Resp. Br. at 4-5. Despite the presence of seemingly conflicting opinions,[4] on this point there can be no doubt: the Warnock Defendants are immune from a libel claim arising out of statements made in their RICO action, as

---

[4] In Central Healthcare Services, P.A. v. Citizens Bank of Philadelphia the Mississippi Court of Appeals correctly stated that "[s]tatements made in connection with judicial proceedings, including pleadings, are, if in any way relevant to the subject matter of the action, absolutely privileged and immune from attack as defamation, even if such statements are made maliciously and with knowledge of their falsehood." 12 So. 3d 1159, 1168 (Miss. Ct. App. 2009) (quoting McCorkle v. McCorkle, 811 So. 2d 258, 266 (Miss. Ct. App. 2001)). But the Mississippi Court of Appeals has also appeared amenable to the idea that malice can overcome a claim of this type of privilege. McCorkle, 811 So. 2d at 266; see also Prewitt v. Phillips, 25 So. 3d 397 (Miss. App. 2009).

14

long as the statements were pertinent and relevant to those proceedings. Some time ago, the Mississippi Supreme Court carefully considered this exact issue and settled on the "American rule" that statements made in a judicial proceeding, if pertinent and relevant to that proceeding, are absolutely privileged. See Hardtner v. Salloum, 114 So. 621, 624 (Miss. 1927); see also Gunter v. Reeves, 21 So. 2d 468, 470 (Miss. 1945) (espousing a similar rule with regard to criminal proceedings). In this context at least, allegations of malice *do not* overcome a privilege that is absolute. Hardtner, 114 So. 621 at 624 ("Appellant further says . . . the libelous matter was maliciously false. However that may be, if pertinent and relevant in a pleading in a judicial proceeding, it is absolutely privileged."). But see, Miss. Code Ann. § 71-5-131 (establishing that communications of the employment security commission are "absolutely privileged" *except* those "maliciously" communicated). Because Clinton has failed to make any allegations that the Warnock Defendants included libelous matter in their pleadings that was impertinent or irrelevant to the underlying litigation, the statements made during those proceedings are absolutely privileged and Clinton's libel claim must be dismissed.

*4. Invasion of Privacy Claims*

The same reasoning that applies to Clinton's libel claims applies equally to each of Clinton's invasion of privacy claims. See Brasel v. Hair Co., 976 So. 2d 390, 392 (Miss. App. 2008)

15

(stating four invasion of privacy theories; false light and appropriation of plaintiff's name are alleged by Clinton). First, the Mississippi Supreme Court has held that invasion of privacy claims, like defamation claims, must be brought within one year of the time that they accrued. Young v. Jackson, 572 So. 2d 378, 382 (Miss. 1990) (citations omitted). Like Clinton's other claims based upon the Clarion Ledger advertisement, these claims are barred. As to claims arising from the allegations contained in the RICO lawsuit, the Warnock Defendants correctly state that the same privilege that applies in defamation claims applies to invasion of privacy claims. Young, 572 So. 2d at 383 ("[A]ctions for invasion of privacy are subject to the defense of privilege the same as defamation actions.").[5] As explained above, Clinton has not alleged that the Warnock Defendants made libelous statements in their pleadings that were irrelevant to those proceedings, and therefore his invasion of privacy claims fail because the statements on which they are predicated are shielded by absolute privilege.

*5. Abuse of Process*

As for Clinton's final claim, the Warnock Defendants statute of limitation's defense falls short. Clinton filed his Complaint within one year of the termination of the RICO suit and that suit forms the basis of his abuse of process claim. There is no merit to

---

[5] Although Young applied the more common qualified privilege, the supreme court's holding, as stated, applies equally to claims of absolute privilege.

the argument that this claim is barred by the statute of limitations. Further, while the Warnock Defendants appear to seek dismissal of this claim on some other ground, they fail to explain why the cases cited in their brief entitle them to dismissal. See Def.'s Resp. Br. at 9-11. Therefore, the Court will deny the Defendants' Motion with respect to Clinton's abuse of process claim.

6. Noerr-Pennington doctrine

Finally, the Warnock Defendants obliquely state in their conclusion that the Noerr-Pennington doctrine excuses them from liability for all Clinton's claims arising out of their participation in the RICO action. See Def.'s Resp. Br. at 13. The Court is hesitant to address the potentially far-reaching constitutional issue implicated by the Noerr-Pennington doctrine because it is not clear from the Warnock Defendants' page-long block quote what exact argument they are advancing. Nevertheless, the Court can readily conclude that regardless of whether the Warnock Defendants' First Amendment right to petition the government is at odds with Clinton's claims, see Video Intern. Prod., Inc. v. Warner-Amex Cable Commc'ns. Inc., 858 F.2d 1075, 1084 (5th Cir. 1988), Clinton's claims would survive dismissal because the First Amendment does not protect litigation that is objectively baseless. Bryant v. Mississippi Military Dept., 569 F. Supp. 2d 680, 683 (S.D. Miss. 2008) (citing Prof'l Real Estate

Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 59 (1993)). Clinton consistently alleges that the RICO action was objectively baseless, and therefore, to the extent that the Noerr-Pennington doctrine applies, it would not bar any of Clinton's claims arising out of the RICO lawsuit.

## IV. CONCLUSION

Having carefully considered the Defendants' Motions, **IT IS HEREBY ORDERED THAT** the Morgan & Morgan Defendants' Motion to Dismiss [**docket no. 16**] is **GRANTED**. Plaintiff has failed to state a plausible claim against them, and therefore all Plaintiffs' claims against the Morgan & Morgan Defendants are **DISMISSED WITH PREJUDICE. IT IS FURTHER HEREBY ORDERED THAT** Defendants' Motion to Dismiss [**docket no. 3**] is **GRANTED IN PART AND DENIED IN PART**. Plaintiff has stated plausible claims for malicious prosecution, intentional infliction of emotional distress, and abuse of process against the Warnock Defendants and may proceed with discovery on those claims only. Plaintiff's defamation claim, negligent infliction of emotional distress claim, and invasion of privacy claims are **DISMISSED WITH PREJUDICE.** No further order will issue at this time.

So **ORDERED,** this the 6th day of March 2013.

/s/ David Bramlette
**UNITED STATES DISTRICT COURT**